UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DANIEL J. HERBERT | : |
|    PLAINTIFF, | : |
| | : CIVIL ACTION NO. 3:08cv1945 |
| | :         (VLB) |
| | : |
| v. | : JANUARY 23, 2012 |
| | : |
| NATIONAL AMUSEMENTS, INC., | : |
|    DEFENDANT | : |

<u>**ORDER DENYING DEFENDANT's [DOC. #64] MOTION IN LIMINE TO EXCLUDE PLAINTIFF'S USE OF SUBORDINATE BIAS OR CAT'S PAW LIABILITY**</u>

Defendant has moved to exclude Plaintiff from advancing a subordinate bias or "cat's paw" theory of liability under his ADEA and CFEPA claims.  The Defendant points to a recent Second Circuit case for the proposition that the Second Circuit has never formally recognized the cat's paw theory in discrimination cases and has argued that the Supreme Court's recent decision in *Staub v. Proctor Hosp.*, ----U.S.----, 131 S.Ct. 1186 (2011) regarding cat's paw liability should not be applied to Plaintiff's ADEA or CFEPA claims.  *See Nagle v. Marron*, 663 F.3d 100, 118 (2d Cir. 2011).  In *Nagle*, the Second Circuit's analysis was centered on whether a "cat's paw" theory of liability should be applied in a Section 1983 context.  *Nagle*, 663 F.3d at 118 (noting that "several Circuits have held either or assumed that cat's paw liability would be available under § 1983").  The Second Circuit acknowledged that while the recent Supreme Court's decision *Staub* involved discrimination under the Uniformed Services and

1

Reemployment Rights Act ("USERRA") that the Supreme Court indicated that USERRA was "'very similar to Title VII'" and then noted that the Second Circuit has analogized Title VII to Section 1983 cases. Id. (quoting Stabu, 131 S.Ct. at 1194). The Second Circuit then remanded the question of whether "cat's paw" liability should apply to a Section 1983 claim to the district court. Therefore, the Second Circuit's decision in *Nagle* is not directly on point to whether a theory of cat's paw liability is applicable in traditional employment discrimination case.

Although it does not appear that the Second Circuit has formally recognized the term "cat's paw," the Second Circuit and districts courts within the Circuit have recognized theories of subordinate bias in employment discrimination cases. See *Saviano v. Town of Westport*, 3:04-cv-522, 2011 WL 4561184, at *7 n.15 (D. Conn. Sept. 30 , 2011) (noting that while the Second Circuit has not formally recognized the "cat's paw" theory, it has "held that bias at any stage of a decision process can taint the ultimate decision in violation of Title VII"). The Second Circuit in *Bickerstaff v. Cassar Coll.*, 196 F.3d 435 (2d Cir. 1999) "recognize[d] that the impermissible bias of a single individual at any stage of the promoting process may taint the ultimate employment decision in violation of Title VII. This is true even absent evidence of illegitimate bias on the part of the ultimate decision maker, so long as the individual shown to have the impermissible bias played a meaningful role in the promotion process." 196 F.3d at 450.

**Accordingly, the theory of liability that the "impermissible bias of a single individual can infect the entire group of collective decision makers…at least when the decisionmakers are overly deferential to the biased individuals' recommendations" is one that is well accepted by courts within this Circuit.** *Baron v. N.Y. City Dep't of Educ.*, No.06-CV-2816 (FB)(MDG), 2009 WL 1938975, at *6, 8 (E.D.N.Y. 2009) (finding in an ADEA action that since the evaluations made by allegedly biased subordinate made up only a portion of the plaintiff's file that negated "any inference that the committee that made the termination decision was tainted by [the subordinate's] alleged bias") ; *see also*, *Fullard v. City of New York*, 274 F.Supp.2d 347, (S.D.N.Y. 2003) ("[T]he employer will be liable where the decision-maker 'rubber stamps' the recommendation of [biased] subordinates; in such cases, we say that the decision-maker acts as a conduit of the subordinates' improper motive." (citations, internal quotation marks and citations omitted); *Britt v. Merrill Lynch & Co., Inc.*, No.08CV5356, 2011WL 4000992, at *8 (Aug. 26, 2011) (considering whether Plaintiff had alleged facts establishing a cat's paw theory of liability); *Fullard v. City of N.Y.*, 274 F.Supp.2d 347, 357 (S.D.N.Y. 2003) ("the bias of the subordinate will support a finding of liability as long as it played a substantial role in the final decision").

Although as Defendant points out the Supreme Court's decision in *Staub* was rendered in an USERRA discrimination case, the Court sees no reason why *Staub*'s holding should be limited to the USERRA context.

First, the Supreme Court expressly indicated in *Staubs* that USERRA was similar to Title VII.  Second, the Supreme Court's analysis was predicated upon underlying principles of agency and tort law which are equally applicable to all types of employment discrimination.  See *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 72 (1986) (finding that Congress intended courts "to look to agency principles for guidance" when determining employer liability under Title VII).  Lastly, as noted above courts in this Circuit have already applied theories of subordinate bias within both the Title VII and ADEA context.

Plaintiff concedes that since *Staubs* involved a mixed-motive analysis and does not reflect the ADEA's "but-for" causation standard as articulated by the Supreme Court in *Gross v. FBL Fin. Servs. Inc.*, 557 U.S. -----, 129 S.Ct. 2343, 2350 (2009) the Court cannot apply *Staubs* directly to an age-discrimination case.   However, the Court sees no reason why the analysis in *Staubs* regarding subordinate bias cannot be reconciled with *Gross*'s but-for causation standard.   A recent Tenth Circuit case, *Simmons v. Sykes Enterprises Inc.*, 647 F.3d 943 (10th Cir. 2011) did just that reconciling *Staub*'s holding on subordinate bias with the causation standard applicable under the ADEA.  The Tenth Circuit reasoned first that the subordinate bias doctrine applied in age discrimination cases and then second that under *Gross* liability for subordinate bias could only be established where the "the subordinate's animus was a 'but-for' cause of the adverse employment action, i.e. it was the factor that made a

4

difference." *Id.* at 949-50.  The Tenth Circuit noted that "[i]n age-discrimination cases…the relationship between a subordinate's animus and the ultimate employment decision must be closely linked." *Id.* at 949.

The Tenth Circuit then illustrated several examples where a subordinate or supervisor's animus might be a 'but-for' cause of termination:

> [T]he biased supervisor falsely reports the employee violated the company's policies, which in turn leads to an investigation supported by the same supervisor and eventual termination. Or the biased supervisor may write a series of unfavorable periodic reviews which, when brought to the attention of the final decision-maker, serve as the basis for disciplinary action against the employee. But where a violation of company policy was reported through channels independent from the biased supervisor, or the undisputed evidence in the record supports the employer's assertion that it fired the employee for its own unbiased reasons that were sufficient in themselves to justify termination, the plaintiff's age may very well have been in play—and could even bear some direct relationship to the termination if, for instance, the biased supervisor participated in the investigation or recommended termination—but age was not a determinative cause of the employer's final decision.

*Id.* at 950.  The Tenth Circuit noted that while "assuming without deciding that [the supervisors] were motivated by ageist animus and intended to have [plaintiff's] employment terminated, [the court] must still determine whether [plaintiff's] age was a 'but-for' cause of her termination by asking whether [the ultimate decision maker] would have fired [plaintiff] but for the [supervisor's] alleged bias."  The Tenth Circuit's application of the subordinate bias doctrine as articulated in *Staub* to an ADEA claim under *Gross* is persuasive.  Since subordinate bias is a theory of liability which courts in this Circuit has recognized in both the ADEA and Title VII context,

5

the Supreme Court's holding in *Staub* is applicable to the Court's analysis. Consequently the application of *Staub*'s framework regarding "cat's paw" liability to *Gross*'s but-for causation standard compels the conclusion that a plaintiff may only establish liability under the ADEA if the plaintiff is able to demonstrate that the acts taken by an allegedly biased supervisor, who intended to cause an adverse employment action, were the but-for cause of the plaintiff's termination.

Since Plaintiff's CFEPA age discrimination claim is subject to a mixed-motive and not a 'but-for' causation analysis, the Supreme Court's holding in *Staub* is directly applicable to that cause of action. Accordingly, Plaintiff may introduce evidence demonstrating that the acts taken by his allegedly biased supervisor, who intended to cause an adverse employment action, were the but-for cause of his termination for his ADEA claim and that those acts were the proximate cause of his termination for his CFEPA claim.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant

United States District Judge

Dated at Hartford, Connecticut: January 23, 2012